MATTHEW GIBSON and KRISTINE §
GIBSON, §
§
   Plaintiffs, §
§
v. § CIVIL ACTION NO. 3:16-CV-3099-B
§
L I B E R T Y   I N S U R A N C E §
CORPORATION, DARRELL SCOTT, §
TRACY AINSWORTH, and HOLLY §
VAUGHAN, §
§
   Defendants. §

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Matthew Gibson and Kristine Gibson's Motion to Remand.

Doc. 6. For the reasons explained below, Plaintiffs' Motion is **GRANTED**.

## I.

## BACKGROUND

*A. Factual History*[1]

This case arises out of an insurance company's allegedly wrongful denial of a claim for fire damage under a homeowner's insurance policy. Plaintiffs Matthew and Kristine Gibson owned a home at 822 Baldridge Street in O'Donnell, Texas. Doc. 1-1, Pls.' 1st Am. Pet. 3. The home was insured by Defendant Liberty Insurance Corporation under policy number H37-298-102322-70 (the

---

[1]This factual history is drawn from the parties' state court pleadings pending at the time of removal, as well as from the parties' briefing on the present Motion to Remand. Any disputed fact is noted as the contention of a particular party.

Policy). *Id.* On February 7, 2016, a fire destroyed the home and all personal property inside it. *Id.* Plaintiffs reported the loss to Liberty, and Liberty assigned multiple adjusters to perform various tasks in the investigation and adjustment of the insurance claim. *Id.* According to Plaintiffs, Defendant Tracy Ainsworth was the adjuster responsible for coordinating the work of all the other adjusters. *Id.* Defendant Holly Vaughan was responsible for adjusting the personal property portion of the claim. *Id.* And Defendant Darrell Scott investigated the claim as a member of Liberty's Special Investigations Unit. *Id.* Liberty ultimately denied the claim after rescinding the Policy based on an alleged misrepresentation by Plaintiffs in obtaining the Policy. *Id.* at 4.

Plaintiffs initially filed suit in Texas state court on September 27, 2016, against Liberty and the three individual adjusters. Doc. 1-1, Pls.' Orig. Pet. Plaintiffs alleged that Defendants collectively "failed to properly inspect and adjust the loss and instead searched for an excuse to deny the claim." *Id.* at 4. Plaintiffs sued Liberty for breach of the Policy, various violations of chapters 541 and 542 of the Texas Insurance Code, violation of the Texas Deceptive Trade Practices Act, common law bad faith, and declaratory judgment. *Id.* at 5–9. Additionally, Plaintiffs sued each of the adjusters (the Adjuster Defendants) individually for their own alleged violations of the Texas Insurance Code. *Id.* at 9–14. All four defendants answered in state court on October 28, 2016. Doc. 1-1, Defs.' Orig. Answer.

Plaintiffs later filed their First Amended Petition in state court on November 1, 2016, alleging all of the same causes of action against the same four defendants. Doc. 1-1, Pls.' 1st Am. Pet. 5–13.[2]

---

[2]The only difference between the Original Petition and First Amended Petition appears to be that page two of the First Amended Petition includes an additional sentence after each individual adjuster's name indicating that the individual "has made an appearance in this suit and, pursuant to the Texas Rules of Civil Procedure, may be served through [his or her] counsel of record." Doc. 1-1, Pls.' 1st Am. Pet. 2.

Liberty answered the First Amended Petition in state court on November 4, 2016, and immediately removed the case to this Court on the same day, asserting diversity jurisdiction and improper joinder of the Adjuster Defendants. Doc. 1, Notice of Removal; Doc. 1-1, Liberty's Answer to Pls.' 1st Am. Pet.

B.      *Procedural History*

Plaintiffs timely filed their Motion to Remand on December 2, 2016, arguing that the individual Adjuster Defendants were properly joined and thus defeat diversity jurisdiction. Doc. 6, Pls.' Mot. to Remand. Before any defendant responded to Plaintiffs' Motion for Remand, Liberty requested (Doc. 11), and was granted (Doc. 12), leave to file an Amended Notice of Removal, which it did on December 22, 2016. Doc. 14. In its Amended Notice of Removal, Liberty abandoned the prior basis of removal jurisdiction—improper joinder—arguing instead that complete diversity exists because Plaintiffs originally mispled their citizenship and are in fact citizens of either Alaska or Utah and not Texas. Doc. 14, Am. Notice of Removal ¶ 4; Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 3. Therefore, according to Liberty, Plaintiffs "are completely diverse from Liberty and Defendants Scott, Ainsworth and Vaughan" and thus "improper joinder is no longer an issue." Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 6.

Defendants then responded to Plaintiffs' Motion to Remand with arguments in support of Liberty's Amended Notice of Removal rather than the original Notice of Removal based on improper joinder. Doc. 16. Plaintiffs replied, noting that they had also previously "briefed the fraudulent joinder issue in their Opposed Motion for Remand and continue to contend that Defendants Scott, Ainsworth, and Vaughan were properly joined." Doc. 21, Pls.' Reply ¶ 2 n.1 (internal citation omitted). Thus, Plaintiffs' Motion to Remand is ripe for review.

Half an hour after Plaintiffs filed their Reply in Support of Motion to Remand, Liberty—without leave of court—filed a Second Amended Notice of Removal, incorporating *both* its improper joinder and mispled citizenship arguments. Doc. 23, 2d Am. Notice of Removal. Plaintiffs moved to strike this Second Amended Notice of Removal, arguing that Defendants had previously abandoned the improper joinder argument and should not be allowed to resurrect it with a third notice of removal filed without leave of court. Doc. 24, Pls.' Mot. to Strike. Liberty responded (Doc. 26), and Plaintiffs replied (Doc. 28). Therefore, the Motion to Strike is also ripe for review.

## II.

## LEGAL STANDARD

Because the jurisdiction of federal courts is limited, a federal court must presume that a suit falls outside its jurisdiction. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party invoking federal jurisdiction has the burden of establishing it. *Id.* In the removal context, this is the removing party. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The federal removal statute must be strictly construed in favor of remand, and all doubts and ambiguities must be resolved against federal jurisdiction. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000); *see also In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The federal removal statute, 28 U.S.C. § 1441(a), permits a defendant to remove any civil action to federal court that falls within the original jurisdiction of the district courts. 28 U.S.C. § 1441(a). One such grant of original jurisdiction is 28 U.S.C. § 1332. That statute grants the district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Removal is proper on this basis only if there is complete diversity of citizenship among the parties

both at the time the complaint is filed and at the time of removal. *Mas v. Perry*, 489 F.2d 1396, 1398–99 (5th Cir. 1974). "Complete diversity" means that no defendant may share citizenship with any plaintiff. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Additionally, none of the parties properly joined and served as defendants in state court may be citizens of the state in which the action is brought. *See* 28 U.S.C. § 1441(b)(2); *see also Gasch. v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

Motions for remand are governed by 28 U.S.C. § 1447, which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). And "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82.

Improper joinder constitutes a narrow exception to the rule of complete diversity required for removal. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) The citizenship of a non-diverse defendant may be disregarded for the purpose of analyzing complete diversity if that non-diverse defendant was improperly joined. *Id.* To establish that a defendant was improperly joined, the removing party must show either: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574. If the in-state defendant was properly joined, then removal was improper and the federal court does not

have jurisdiction. *Id.* at 576.

## III.

## ANALYSIS

A.   *Plaintiffs' Motion to Strike Liberty's Second Amended Notice of Removal*

The Court begins with Plaintiffs' Motion to Strike what amounts to Liberty's third bite at the removal apple. As mentioned above, Liberty initially removed this case based on the alleged improper joinder of the Adjuster Defendants. At that time, Liberty contended that "Plaintiffs are citizens and residents of the State of Texas,"[3] that Liberty is "incorporated in Illinois with its principal place of business in Massachusetts," and that the Adjuster Defendants "are Texas residents and were improperly joined to defeat diversity jurisdiction in this case." Doc. 1, Notice of Removal ¶¶ 4–5.[4] Thus, according to Liberty, when the citizenship of the allegedly improperly joined Adjuster Defendants is removed from the jurisdictional equation, the Court is left with Texas citizens (Plaintiffs) on one side and a citizen of Illinois and Massachusetts (Liberty) on the other, which satisfies complete diversity.

---

[3] Plaintiffs' original and amended state court petitions both state that "Plaintiffs reside in Lynn County, Texas." Doc. 1-1, Pls.' Orig. Pet. 1; Doc. 1-1, Pls.' 1st Am. Orig. Pet. 1.

[4] The Court notes that "residence" and "citizenship" are different for purposes of federal diversity jurisdiction. *See, e.g., Ratcliff v. Ratcliff*, No. 3:15-CV-1289-L, 2015 WL 1959060, at *3 (N.D. Tex. Apr. 30, 2015) (noting that "residence is not synonymous with citizenship"). And failure to allege the citizenship of each defendant in the Notice Removal could itself be grounds for remand. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). However, in its Motion for Leave to Amend the Notice of Removal, Liberty does state that "Scott, Ainsworth and Vaughan are citizens of Texas." Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 6 n.1. Therefore, for purposes of the improper joinder analysis—and because the parties seem to agree that the Adjuster Defendants are indeed Texas citizens—the Court will overlook Liberty's failure to allege the Adjuster Defendants' Texas citizenship in the (first, second, or third) Notice of Removal and indulge the implicit assumption that the Adjuster Defendants, who allegedly *reside* in Texas, are also Texas *citizens*.

Later, with leave of court,[5] Liberty amended the Notice of Removal, changing its theory of removal jurisdiction from improper joinder of the Adjuster Defendants to Plaintiffs' mispled citizenship. In the Motion for Leave to Amend, Liberty argued that after the fire that destroyed Plaintiffs' home, Plaintiffs relocated to either Alaska or Utah. Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶¶ 3, 6, 7.[6] Therefore, according to Liberty, Plaintiffs were not Texas residents at the time they filed their state court petition. *Id.* In support, Liberty alleged that Plaintiffs currently reside in Alaska, that Plaintiff Matthew Gibson is employed and registered to vote in Alaska, and that before moving to Alaska Plaintiffs lived in Utah, where they registered a domain name using a Utah address and received property tax statements for Plaintiffs' now-destroyed home in Texas. *Id.* ¶¶ 3, 6. Thus, Liberty reasoned, "[s]ince Plaintiffs are not citizens of Texas they are completely diverse from Liberty and Defendants Scott, Ainsworth and Vaughan. As such, improper joinder is no longer an issue and this Court has subject matter jurisdiction over the case and the parties." *Id.* ¶ 6.

In response, Plaintiffs did not contradict the facts alleged by Liberty, but disagreed that

---

[5]Confusingly, Plaintiffs submitted an "Advisory to the Court" indicating that "although Plaintiff[s] did not oppose Defendant Liberty Insurance Corporation's Motion for Leave to Amend Notice of Removal, Plaintiff[s] do[ ] not agree with the jurisdictional facts asserted by Defendant, and once Defendant amends its notice of removal, Plaintiff[s] intend[ ] to file a supplement to Plaintiff[s'] Motion to Remand." Doc. 13, Pls.' Advisory to Ct. Thus, although Plaintiffs did not oppose Liberty's filing of the Amended Notice of Removal, they apparently objected to the grounds Liberty asserted therein as the basis of removal. In any event, Plaintiffs never filed a supplement to the Motion to Remand.

[6]Although Liberty indicated in the Motion for Leave that "Plaintiffs are domiciled in either Alaska or Utah" (Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 6), it seems to have settled on Alaska in the actual Amended Notice of Removal. Doc. 14, Am. Notice of Removal ¶ 4 ("Plaintiffs are citizens and residents of the State of Alaska.").

Plaintiffs' "temporary" living situation represents a change of "domicile." Doc. 22, Br. in Supp. of Pls.' Reply ¶¶ 8–17. Additionally, Plaintiffs argued that even if Plaintiffs *are* citizens of either Alaska or Utah, the forum-defendant rule would prevent removal of this case because even though complete diversity would exist, the individual Adjuster Defendants are citizens of the forum state of Texas. *Id.* ¶¶ 4–6, 19.

A half-hour after Plaintiffs filed their Reply pointing to the applicability of the forum-defendant rule, Liberty apparently realized that improper joinder was its better argument for removal and amended its Notice of Removal again, this time without leave of court. Liberty's Second Amended notice of removal still maintained that Plaintiffs are citizens of Alaska, but also reasserted its previously abandoned improper joinder argument. Doc. 23, 2d Am. Notice of Removal ¶¶ 3, 7–9. Plaintiffs moved to strike the Second Amended Notice of Removal, arguing that it was filed without leave of court and that it attempts in bad faith to re-raise a meritless improper joinder argument that Liberty had previously abandoned. Doc. 24, Pls.' Mot. to Strike ¶¶ 4, 7–8. Liberty responded that it had "erroneously omitted the [improper joinder] jurisdictional basis for removal" from its Amended Notice of Removal and that leave of court was not required anyway because the "Second Amended Notice of Removal was filed within thirty days of the time period allowed for removal as set forth in 28 U.S.C. § 1446(b)(2)(B) and is, therefore, timely." Doc. 27, Liberty's Br. in Supp. of Resp. to Pls.' Mot. to Strike ¶ 3.

The Court finds Liberty's response somewhat disingenuous for several reasons. First, contrary to Liberty's implication, the omission of improper joinder from the Amended Notice of Removal appears to have been quite intentional, as Liberty—apparently thinking it had found a stronger basis for removal—stated in its Motion for Leave to Amend that "improper joinder is no longer an issue."

Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 6. Liberty implicitly, if not explicitly, conceded that the Adjuster Defendants were properly joined at that time, so the Court is suspect of its present attempt to paint the omission of improper joinder from the Amended Notice of Removal as a mere oversight. Second, if Liberty truly believed that leave was not required for its second amendment to the Notice of Removal, one wonders why Liberty bothered to request it for the first amendment. Finally, Liberty appears to misinterpret the law regarding the deadline for amending a notice of removal.

Liberty repeatedly argues that its Second Amended Notice of Removal, filed January 12, 2017, was timely because it was filed "within the thirty day period as set forth in § 1446(b)." *See, e.g.*, Doc. 27, Liberty's Br. in Resp. to Pls.' Mot. to Strike ¶ 3. However, the 30-day period in § 1446(b) refers to the 30 days after receipt by a defendant in state court of a pleading or other paper first establishing that a case is removable. *See* 28 U.S.C. § 1446(b); *see also Wilson v. Int'l Bus. Mach. Corp.*, No. 3:11-CV-0944-G, 2011 WL 4572019, at * 1–3 (N.D. Tex. Oct. 3, 2011) ("The first paragraph of Section 1446(b) states that if the initial pleading sets forth a removable claim, the defendant must file the notice of removal within thirty days of the receipt of that pleading.").

Liberty's Second Amended Notice of Removal came more than 30 days after both the original (September 27, 2016) and amended (November 1, 2016) state court petitions that would have first put Liberty on notice that this case was, arguably, removable. Thus, the January 12, 2017 Second Amended Notice of Removal was not "within the thirty day period . . . set forth in § 1446(b)," regardless of which state court pleading the Court uses as a starting point. And while courts have allowed amendment outside of the 30-day removal period to correct "technical defects" in jurisdictional allegations to "set out more specifically the grounds for removal that already have been

stated, albeit imperfectly[,]" "[c]ompletely new grounds for removal jurisdiction may not be added." *Blakeley v. United Cable Sys.*, 105 F. Supp. 2d 574, 578–79 (S.D. Miss. 2000). Because Liberty previously removed the improper joinder argument from its original Notice of Removal, it would seem to constitute a "new ground" when reasserted in the Second Amended Notice of Removal.

All that being said, the Court does not find it necessary to strike Liberty's Second Amended Notice of Removal in this case. Plaintiffs' Motion to Remand is based entirely on the original Notice of Removal, which asserted only the improper joinder basis for removal. Therefore, the Court would have to address improper joinder regardless of whether it struck the Second Amended Notice of Removal. Thus, Plaintiffs wouldn't really gain anything by having the Court strike Liberty's Second Amended Notice of Removal. Furthermore, as discussed below, remand is appropriate in this case no matter which Notice of Removal the Court considers. Therefore, Plaintiffs' Motion to Strike Liberty's Second Amended Notice of Removal is **DENIED**. The Court turns now to the merits of Plaintiffs' Motion to Remand.

B.     *Plaintiffs' Motion to Remand*

Having now had three chances to make its case for removal, Liberty essentially argues two theories for jurisdiction. First, it argues that the individual Adjuster Defendants were improperly joined because "Plaintiffs have not pled any factual allegations regarding Defendants Scott, Ainsworth and Vaughan that could form the basis of an independent cause of action against them as opposed to the carrier." Doc. 23, 2d Am. Notice of Removal ¶ 9. Second, Liberty argues that even if the individual Adjuster Defendants were properly joined, complete diversity still exists because Plaintiffs are not citizens of Texas but are instead citizens of either Alaska or Utah. Doc. 14, Am. Notice of Removal ¶ 4; Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 3, 6.

Although the parties consistently refer to only the first argument as "improper joinder" in their briefing, Liberty's two arguments for removal jurisdiction are actually just the two different branches of the improper joinder tree.

### 1.    Improper Joinder

As mentioned above, there are two ways to prove improper joinder: (1) actual fraud in the pleading of jurisdictional facts; and (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood*, 385 F.3d at 573. While most cases deal primarily with the latter, Liberty has alleged both.

"Fraudulent" joinder—as the first branch of improper joinder is sometimes called—typically involves a situation where the plaintiff mispleads the citizenship of a defendant to defeat diversity jurisdiction. *See, e.g.*, *Nelson v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 328, 331 (S.D. Tex. 1995). The present case is somewhat unusual in that Liberty contends Plaintiffs have mispled *their own* citizenship rather than the citizenship of any defendant.[7] Though less commonly seen, "the fraudulent joinder doctrine may be applied where a defendant claims that a plaintiff has been fraudulently joined." *Elk Corp. of Tex. v. Valmet Sandy-Hill, Inc.*, No. CIV.A. 3:99-CV-2298G, 2000 WL 303637, at *2 (N.D. Tex. Mar. 22, 2000). Analysis of the second—and more common—branch of the improper joinder tree, however, requires remand in this case regardless of whether Plaintiffs are citizens of Texas or Utah or Alaska.[8] Therefore, the Court now turns its attention to the second

---

[7]Liberty concedes that it is a citizen of Illinois and Massachusetts (Doc. 23, 2d Am. Notice of Removal ¶ 4) and that the individual Adjuster Defendants are all "citizens of Texas" (Doc. 11, Unopposed Mot. for Leave to Am. Notice of Removal ¶ 6 n.1), which Plaintiffs do not appear to dispute.

[8]As explained more fully below, the Court's determination that the individual Adjuster Defendants were properly joined dispenses with the need to determine whether Plaintiffs mispled their Texas citizenship. *See infra* note 12.

method of proving improper joinder and the question of whether there is any reasonable basis to predict that Plaintiffs would be able to recover against the individual Adjuster Defendants in state court under the applicable state law. *Smallwood*, 385 F.3d at 573.

To predict whether a plaintiff has a reasonable basis of recovery under state law, the Court may either: (1) conduct a Rule 12(b)(6)-type of analysis to determine whether the allegations in Plaintiffs' state court petition state a claim under the applicable state law against the non-diverse defendants; or (2) pierce the pleadings and conduct a summary inquiry to identify the presence of discrete and undisputed facts that would preclude Plaintiffs' recovery against the in-state defendants. *Id.* at 573–74. The latter approach, however, is disfavored, as it "carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id.* at 574. Here, the Court finds it appropriate to proceed with a Rule 12(b)(6)-type analysis of Plaintiffs' First Amended Petition filed in state court.[9]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[10] In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most

---

[9]Although Plaintiffs filed a Second Amended Complaint (Doc. 41) in this Court on May 24, 2017, "[t]o determine whether jurisdiction [was] present for removal, [the court] consider[s] the claims in the state court petition as they existed at the time of removal." *Manguno*, 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). Therefore, for purposes of the improper joinder analysis, the Court looks only to the state court petition pending at the time the case was removed.

[10]For purposes of improper joinder, in conducting a 12(b)(6)-type analysis of a pleading originally filed in Texas state court, federal pleading standards apply. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).

favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In their First Amended Petition, Plaintiffs alleged that the individual Adjuster Defendants committed various violations of § 541.060 of the Texas Insurance Code. Doc. 1-1, Pls.' 1st Am. Pet. 9–13. Plaintiffs claimed the Adjuster Defendants:

have, among other violations, violated the following provisions of the Code:

1. Insurance Code chapter 541, section 541.060 by, among other things:

   - misrepresenting one or more material facts and/or policy provisions relating to coverage;
   - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;
   - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a policy with respect to which liability has become reasonably clear in order to influence Plaintiffs to settle their claim with respect to another portion of the policy;
   - refusing to affirm or deny coverage within a reasonable time; and/or
   - refusing to pay Plaintiffs' claim without conducting a reasonable investigation.

*Id.* at 9. These allegations correspond to provisions (a)(1), (a)(2)(A), (a)(2)(B), (a)(4), and (a)(7) of § 541.060 of the Insurance Code, respectively. *Id.*[11]

In general, Plaintiffs blame the adjusters for "fail[ing] to fully and adequately investigate the claim, adjust the loss, and inspect the damage to Plaintiffs' property." *Id.* at 10. More specifically, Plaintiffs allege the adjusters "searched for an excuse to deny the claim" and alerted Liberty to the possibility "that the Insurance Policy was obtained through misrepresentation[,] . . . resulting in [Liberty] rescinding the Policy, declaring it null and void as of its effective date, in order to avoid making payment on the covered loss." *Id.* Simply put, Plaintiffs allege that instead of conducting a full and fair investigation of their fire damage claim, the individual Adjuster Defendants drug out the investigation and ultimately dug up an excuse for Liberty to rescind the Policy and deny the claim. *See id.*

Plaintiffs' First Amended Petition also includes specific allegations as to the conduct of each individual Adjuster Defendant. As to Ainsworth, Plaintiffs argue he "misrepresented the terms of the policy by stating that there was no set number of days allowed for the investigation as long as Liberty was still investigating the loss and asking for information from the Plaintiffs." *Id.* at 11.

---

[11]Elsewhere in the First Amended Petition, Plaintiffs also assert that the "Insurance Defendants and the Adjusters" violated §§ 542.055 and 542.056 of the Texas Insurance Code. *See* Doc. 1-1, Pls.' 1st Am. Pet. 5. Thus, it appears Plaintiffs may also have intended to assert violations of chapter 542 of the Insurance Code against the individual Adjuster Defendants as well. As discussed below, however, because the Court finds that Plaintiffs have stated a claim against the individual Adjuster Defendants for a violation of one provision of the Texas Insurance Code, it need not address whether Plaintiffs have stated a claim for *every* alleged violation. *See Phillips v. Chubb Lloyds Ins. Co. of Tex.*, No. 3:12-CV-3745-B, 2012 WL 12887001, at *3 (N.D. Tex. Nov. 28, 2012) (citing *Gray ex. rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 n.11 (5th Cir. 2004)) ("The Court need not review [all] claims against [in-state defendant] to determine whether each properly states a cause of action against her, because one valid claim against [in-state defendant] is enough to defeat [removing defendant's] improper joinder argument.").

Additionally, Plaintiffs contend Ainsworth "deliberately delayed adjustment of the claim by making unreasonable requests for information[,]" "failed to assist the Plaintiffs in the filing of their claim[,]" and "failed to respond to Plaintiff[s'] requests for records pertinent to their claims." *Id.* at 11–12.

Plaintiffs contend Vaughan "made unreasonable requests for additional information in order to delay the adjustment of the claim[,]" "misrepresented that Plaintiffs were not entitled to payment for their covered personal property loss because they allegedly provided less than $5,000 in receipts[,]" "refused to respond to inquiries from Plaintiffs[,]" and "never provided any estimate of the personal property loss nor made any offer of settlement." *Id.* at 13.

Finally, as to Scott, Plaintiffs allege that he "conducted a results-oriented investigation[,]" "focused his investigation on the homeowners' policy application process" after arson was ruled out as a cause of the fire, and "failed to respond to Plaintiffs['] queries as to the status of their claim and Scott's investigation." *Id.*

Liberty concedes that "Plaintiffs have included factual allegations related to the investigation and evaluation of the claim by the individual adjusters," but argues that "the dispositive issue in the case is whether Liberty improperly rescinded the policy." Doc. 27, Liberty's Br. in Resp. to Pls.' Mot. to Strike ¶ 6. And according to Liberty, "Plaintiffs have not alleged any facts in their petition that would support liability against the adjusters for Liberty's decision to rescind the policy." Doc. 1, Notice of Removal ¶ 9; Doc. 23, 2d Am. Notice of Removal ¶ 9. Liberty contends that "the facts alleged against Scott, Ainsworth and Vaughan regarding their handling of Plaintiffs' claim are not relevant to the primary issue in this case—whether the policy was properly rescinded by Liberty." *Id.* Additionally, Liberty argues that "Texas law does not contemplate that adjusters like Scott, Ainsworth and Vaughan will be held individually liable for the insurance carrier's decision on a

claim." *Id.*

Both the Texas Supreme Court and the Fifth Circuit have recognized that an insurance adjuster may be held individually liable for violating chapter 541 of the Texas Insurance Code. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex. 1996); *Gasch*, 491 F.3d at 282. There is some disagreement among district courts, however, regarding which specific provisions of chapter 541 provide a cause of action against individual adjusters. This Court has previously held, for instance, that §§ 541.060(a)(4) and (a)(7) do not provide a cause of action against individual adjusters. *Thomas v. State Farm Lloyds*, No. 3:15-CV-1937-B, 2015 WL 6751130, at *4 (N.D. Tex. Nov. 4, 2015) (citing *Mainali Corp. v. Covington Specialty Ins. Co.*, No. 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015); *Slabaugh v. Allstate Ins. Co.*, No. 4:15CV115, 2015 WL 4046250, at *4–5 (E.D. Tex. June 30, 2015); *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 725 (N.D. Tex. 2014)). Thus, the Court can easily find here that there is no reasonable basis to predict that Plaintiffs could recover in state court against the individual Adjuster Defendants on Plaintiffs' allegations that the adjusters refused to affirm or deny coverage within a reasonable time or refused to pay the claim without conducting a reasonable investigation. *See id.*

On the other hand, several courts—including this one—have found that an adjuster may be held personally liable for engaging in unfair settlement practices in the adjustment of a claim under § 541.060(a)(2). *Arlington Heights Mem'l Post No. 8234 Veterans of Foreign Wars of the United States, Fort Worth, Tex. v. Covington Specialty Ins. Co.*, No. 3:16-CV-3112-B, 2017 WL 1929124, at *3–4 (N.D. Tex. May 10, 2017); *Denley Grp., LLC v. Safeco Ins. Co. of Ind.*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *4 (N.D. Tex. Sept. 30, 2015); *Linron Props., Ltd. v. Wausau Underwriters Ins. Co.*,

No. 3:15-CV-0293-B, 2015 WL 3755071, at *5 (N.D. Tex. June 16, 2015); *Thomas*, 2015 WL 6751130, at *4; *Yeldell v. GeoVera Specialty Ins. Co.*, No 3:12-CV-1908-M, 2012 WL 5451822, at *4 (N.D. Tex. Nov. 8, 2012); *Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 847 (S.D. Tex. 2001).

Despite the abundance of case law supporting adjuster liability for unfair settlement practices, some courts within this district have questioned the propriety of holding an adjuster individually liable for a violation of § 541.060(a)(2). *See One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-CV-2839-D, 2014 WL 6991277, at *4–5 (N.D. Tex. Dec. 11, 2014); *Messersmith*, 10 F. Supp. 3d at 724. These courts reason that an adjuster cannot be held liable for unfair settlement practices because the adjuster "does not have settlement authority on behalf of [the insurer]" and the adjuster's "sole role is to assess the damage." *Messersmith*, 10 F. Supp. 3d at 724. With all due respect to those courts, as their reasoning in these cases certainly has logical appeal, in the opinion of this Court, consideration of the role played by insurance adjusters in the claims process belies their conclusion.

As noted above, § 541.060(a)(2) prohibits the failure "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a claim. Tex. Ins. Code Ann. § 541.060(a)(2). And as this Court has said before, "[a]s the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about 'prompt, fair, and equitable settlement' of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based." *Denley*, 2015 WL 5836226, at *4 (citing *Arana v. Allstate Tex. Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013); *Vargus v. State Farm Lloyds*, 216 F. Supp. 2d 643, 648 (S.D. Tex. 2002)). "Therefore, a delay in an adjuster's investigation will undoubtedly cause a delay in the payment of the claim, and

an insufficient investigation may well lead to a less than fair settlement of a claim." *Id.*

Determining that the individual Adjuster Defendants can be held liable under the Texas Insurance Code, however, does not necessarily mean that they have been properly joined here. The Court must still consider the sufficiency of Plaintiffs' pleadings to determine whether there is a reasonable basis upon which it could predict that Plaintiffs could recover against the Adjuster Defendants in Texas state court. The Court has already detailed Plaintiffs' specific factual allegations with regard to each of the individual defendants, and Liberty acknowledges that "Plaintiffs have included factual allegations related to the investigation and evaluation of the claim by the individual adjusters." Doc. 27, Liberty's Br. in Resp. to Pls.' Mot. to Strike ¶ 6. Thus, Liberty appears to concede at least in the abstract that individual adjusters *can* be individually liable for their conduct during the "investigation and evaluation" of an insurance claim. But Liberty misses the point when it argues that the individual Adjuster Defendants cannot be held liable for Liberty's decision to rescind the Policy. As Plaintiffs note, they have not sued Liberty or the Adjuster Defendants for rescission of the Policy; Plaintiffs sued Liberty for denying their insurance claim, and the adjusters for their conduct in the investigation of the claim, which allegedly lead to the denial. Doc. 29, Pls.' Reply Br. in Supp. of Mot. to Strike ¶ 4. The rescission of the Policy is merely a fact relevant to the investigation and ultimate denial of the insurance claim.

"If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). And any doubt as to the Court's jurisdiction should be resolved in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Having reviewed Plaintiffs' state court petition with regard to the individual adjusters' alleged conduct during

the investigation and evaluation of Plaintiffs' claim, and taking all well-pleaded facts as true for purposes of the improper joinder analysis, the Court finds Plaintiffs have stated a claim that the individual Adjuster Defendants violated § 541.060(a)(2) of the Texas Insurance Code by failing "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of the insurance claim. Tex. Ins. Code § 541.060(a)(2). Liberty has therefore failed to meet its burden to establish that there is no reasonable basis to predict that Plaintiffs could recover against the individual Adjuster Defendants in state court for violation of § 541.060(a)(2).[12] Accordingly, the Court finds that the individual Adjuster Defendants were properly joined in the state court. And thus removal was improper because the parties are not completely diverse. Therefore, this case should be remanded to state court.[13]

---

[12]As noted above, because the Court has found that Plaintiffs have sufficiently stated one claim, thus defeating removal jurisdiction, it need not consider Plaintiffs' claims with regard to § 541.060(a)(1) or chapter 542 of the Texas Insurance Code. *See supra* note 10.

[13]Here the Court briefly notes that is has proceeded through the improper joinder analysis under the assumption that Plaintiffs are in fact citizens of the state of Texas. Thus, because the Court has now determined that the individual Adjuster Defendants—also purportedly Texas citizens according to Liberty—were not improperly joined (or stated otherwise, *were* properly joined), complete diversity is not present and remand is appropriate. However, even if the Court were to entertain Liberty's argument that Plaintiffs are not citizens of Texas, remand would still be appropriate under the forum-defendant rule because the Adjuster Defendants are—again, according to Liberty—citizens of the forum state of Texas. *See* 28 U.S.C. § 1441(b)(2). All of the defendants answered, and thus were "properly joined and served," in the state court prior to Liberty's filing its Notice of Removal. *See Nat'l Collegiate Student Loan Trust 2006-3 v. Richards*, No. 3:16-CV-1936-M, 2016 WL 4533216, at *2 (N.D. Tex. Aug. 30, 2016). And Plaintiffs raised the forum-defendant rule in their Motion to Remand briefing (Doc. 22, Br. in Supp. of Pls.' Reply ¶ 4) within 30 days of Liberty's Amended Notice of Removal which first asserted complete diversity based on Plaintiffs' allegedly mispled citizenship (Doc. 14). 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ."). Thus, it really does not matter whether Plaintiffs are citizens of Texas or not. If they are, remand is appropriate because the adjusters were not improperly joined. If they are not, remand is appropriate because, the Court having found that the adjusters were properly joined, the adjusters are citizens of the forum state. Either way, remand is appropriate.

2.    Attorneys' Fees

In their Reply in support of their Motion to Remand and the Motion to Strike Liberty's Second Amended Notice of Removal, Plaintiffs request attorneys' fees associated with preparing both motions pursuant to 28 U.S.C. § 1447(c) and Federal Rule of Civil Procedure 11. *See* Doc. 21, Pls.' Reply ¶ 5; Doc. 24, Pls.' Mot. to Strike ¶ 11. In support of their request, Plaintiffs contend that on the morning Liberty submitted its Second Amended Notice of Removal reasserting the improper joinder argument, counsel for Plaintiffs contacted counsel for Liberty "by telephone and alerted them that their removal is improper and asked counsel for defendants to agree to remand the case." Doc. 22, Br. in Supp. of Pls.' Reply ¶ 18. Instead of agreeing to remand, Liberty filed the Second Amended Notice of Removal, reasserting improper joinder. Doc. 23, 2d Am. Notice of Removal. Thus, according to Plaintiffs, "Defendant Liberty was certainly aware that their contention lacked an objectively reasonable basis for seeking removal because counsel for Plaintiffs notified them that their removal would fail pursuant to 28 U.S.C. § 1441(b)(2), also known as the local defendant rule." Doc. 25, Br. in Supp. of Pls.' Mot. to Strike ¶ 11. And furthermore, Plaintiffs continue, "Liberty acknowledged that the argument was futile when they stated it was 'no longer an issue' in their Motion for Leave to File Amended Notice of Removal and when they completely removed any mention of it in their Amended Notice of Removal." *Id.*

Under 28 U.S.C. § 1447(c), a court may award attorneys' fees when a removing party did not have "objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000); 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). There is no "automatic entitlement to an award of attorney's fees." *Id.* at

292. Rather, such an award under § 1447(c) lies within the district court's discretion. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court determines that although remand is proper in this case, Liberty was not objectively unreasonable in seeking removal based on improper joinder, particularly in light of conflicting district court opinions regarding personal liability of insurance adjusters under the various provisions of the Texas Insurance Code. *See Ferguson v. Sec. Life of Denver Ins. Co.*, 996 F. Supp. 597, 604 (N.D. Tex. 1998) (denying non-removing party's motion for attorneys' fees despite granting its motion to remand where the law underlying the removal was unsettled). Additionally, had the Court determined that the adjusters *were* improperly joined, the forum-defendant rule would not have applied, and thus Liberty's argument for removal based on Plaintiffs' citizenship would also not have been objectively unreasonable. Therefore, the Court declines to award attorneys' fees pursuant to § 1447(c) in this case.

Rule 11 also permits a court to impose sanctions "against a party who signs a pleading that is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for its extension, or (3) interposed needlessly and solely for the purpose of delay." *City of El Paso, Tex. v. City of Socorro, Tex.*, 917 F.2d 7, 8 (5th Cir. 1990); Fed. R. Civ. P. 11. As with § 1447(c) above, district courts have "broad discretion" in deciding whether to award Rule 11 sanctions. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). Here, for the same reasons noted above with regard to § 1447(c), the Court declines to impose Rule 11 sanctions in this case.

## IV.

## CONCLUSION

For the above reasons, the Court **DENIES** Plaintiffs' Motion to Strike the Second Amended

Notice of Removal, but **GRANTS** Plaintiffs' Motion to Remand. Accordingly, this case is **REMANDED** back to the 95th Judicial District Court of Dallas County, Texas. All parties will bear their own costs and attorneys' fees.

SO ORDERED.

SIGNED: July 31, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE